IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHERYL DOUGHERTY,

       Plaintiff,

v.             CIVIL ACTION NO. 2:13-cv-08472

RAMONA CERRA, et al.,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

   Pending are Plaintiffs' motion to remand [ECF 14] and Defendants' motion for leave to file a surreply [ECF 22]. For the reasons set forth below, the Court **GRANTS** the motion to remand, and this matter is hereby **REMANDED** to the Circuit Court of Kanawha County, West Virginia. The Court **DENIES** Defendants' motion for leave to file a surreply.

I.  BACKGROUND

*A. Factual Background*

   The following facts are drawn from the Third Amended Complaint, the parties' briefing, and the remand order entered in this case by Judge John T. Copenhaver, Jr. on January 20, 2010. Plaintiff Cheryl Dougherty is a public school teacher in Marshall County, West Virginia and a member of the state's retirement system. Prior to 1991, she participated in a pension plan known as the State of West Virginia Teacher's Retirement System Defined Benefit Plan ("TRS"). During the 1990-1991 school year, Defendant Ramona Cerra visited the elementary school where Plaintiff worked and spoke with Plaintiff and several of her fellow teachers about their pension

plans.  Plaintiff alleges that the employees were led to believe that Cerra had been sent to the school as a representative of Defendant West Virginia Consolidated Public Retirement Board ("the Board").   Cerra told the school employees that the TRS was on the verge of bankruptcy and would not pay promised retirement benefits.   The employees would fare far better, she explained, if they switched their retirement accounts to a new alternative pension plan, the Defined Contribution Plan ("DCP").

Under the DCP, participants would be able to manage their own retirement savings by selecting from one or more of a variety of approved investment options, including a fixed annuity and variable  annuity offered by the Variable Annuity Life Insurance Company ("VALIC").[1] Allegedly unbeknownst to the public school employees, Cerra worked as a representative of VALIC and received a commission for convincing TRS participants to transition to the DCP and to exercise their option to purchase the VALIC products.   Plaintiff claims that she relied on Cerra's misrepresentations and transferred her entire retirement fund account from the TRS to the DCP's fixed VALIC annuity in 1992.

In April 2008, Plaintiff learned from the Board that the DCP was performing far below Cerra's projections.  Plaintiff discovered that she had lost substantial retirement savings by transferring to the DCP and that contrary to Cerra's assertions, she would have been better off if she had remained in the TRS.   The Board offered Plaintiff and other DCP participants the option

---

[1] According to the Third Amended Complaint, American International Group, Inc. ("AIG") is the parent corporation of VALIC.   AIG, along with a number of other corporate entities believed to be related to AIG and VALIC, were named as defendants in the various versions of Plaintiff's complaint.   The state court docket sheet appended to Defendants' Notice of Removal indicates that with the exception of VALIC, all other corporate entities were dismissed from this action by agreed order.

2

to transfer their accounts back to the TRS if at least 65 percent of DCP members elected to transfer. She paid the requisite surrender charge and transferred her retirement account back to the TRS.

    *B.    First Removal*

On May 12, 2008, Plaintiff instituted this class action in the Circuit Court of Marshall County on behalf of those employees who transferred their retirement savings from the TRS to the DCP's fixed VALIC annuity in reliance on the misleading statements of Defendant Cerra. On July 18, 2008, Plaintiff amended her complaint to name the Board and certain VALIC representatives as defendants.[2] On March 26, 2009, Plaintiff moved for leave to file a second amended complaint that added 27 new claims against the VALIC defendants, linking the poor performance of the DCP's fixed VALIC annuity to AIG's alleged engagement in high risk securities activities.

On April 24, 2009, Defendants removed to this Court, claiming that the new allegations of securities fraud contained within the Second Amended Complaint were precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). On June 25, 2009, Plaintiff moved for leave to file her Third Amended Complaint which withdrew the 27 claims that made the case removable. She then moved to remand, arguing that the securities claims had been withdrawn and that federal jurisdiction did not exist on the face of the Third Amended Complaint. By Memorandum Opinion and Order entered January 20, 2010, Judge Copenhaver found that the Third Amended Complaint, rather than the Second Amended Complaint which formed the basis for removal, was the operative pleading in this action. *Dougherty v. Cerra*, No. 2:09-443, 2010 WL 276175, at *3-4 (S.D. W. Va. Jan. 10, 2010) ("Remand Order"). He reasoned that the Third

---

[2] The Board has administered the DCP from its inception. As a result of including the Board as a defendant, this case was transferred to the Circuit Court of Kanawha County.

Amended Complaint alleged fraud only through the sale of VALIC's fixed annuity, which is not a "covered security" under SLUSA. Judge Copenhaver also found that the alternative investment options available within the DCP, though registered securities, did not fall within the scope of Plaintiff's allegations and thus SLUSA's "in connection with" requirement was not satisfied. Having found that Plaintiff's claims as set forth in the Third Amended Complaint did not fall within SLUSA's removal provision, Judge Copenhaver remanded this action.

C. *Second Removal*

This litigation has progressed at a sluggish pace since remand. The state court filings are extensive, but only two are particularly noteworthy. On March 25, 2013, Plaintiff served her third set of requests for admissions on the Board. These requests sought to establish that VALIC marketed and sold its variable annuity product to DCP participants without Board approval. The relevant requests read:

> **REQUEST NO. 1:** Admit that you have never provided any written approval or authorization for VALIC to sell variable rate annuity products to West Virginia teachers.
>
> **REQUEST NO. 2:** Admit that you have never approved a variable annuity product for sale to West Virginia teachers by any third party.

(ECF 17-3 at 2.)

The second filing at issue is a memorandum directed to the state court judge, filed by Plaintiff on April 10, 2013 (the "April 10th Memorandum"). This memorandum arose out of unusual circumstances. On August 11, 2011, Defendants filed a motion for summary judgment in state court, arguing that Plaintiff's claims were time-barred. While this motion remained pending, the state court judge engaged in an ex-parte conversation with one of Defendants' attorneys and asked him to convey to all involved counsel certain questions she had about the

4

effect of a favorable summary judgment ruling on putative class members. (*See* ECF 24-1.) Plaintiff filed the April 10th Memorandum in response to these questions. It contains a description of the Plaintiff's proposed class that differs from the class as defined within the Third Amended Complaint. As stated in this memorandum, the putative class includes not only those teachers who, like Plaintiff, invested in the VALIC fixed annuity, but also those teachers who invested in the VALIC variable annuity. Plaintiff writes:

> In this case, all school employees who deposited their retirement money into either VALIC's fixed annuity product or variable annuity product, between 1992 and 2008, have the same claims. . . . The common claims made by the two categories of teachers (fixed annuity investors or variable annuity investors) are identified as:
> 1. Common law fraud and misrepresentation by VALIC and the individual defendants;
> 2. Joint venture by VALIC and the individual defendants;
> 3. Civil conspiracy by VALIC and the individual defendants;
> 4. Unconscionability of contract with respect to VALIC and the individual defendants; and
> 5. Breach of fiduciary duty by [the Board].
>
> The common operative fact that serves as the basis for each school employee's claim is the deposit of their retirement money into the two products provided through [the Board] by VALIC. Each time an employee's money was deposited into one of those two products, it was done based on incorrect, faulty and fraudulent statements and omissions.

(ECF 17-2 at 2-3.) Plaintiff goes on to emphasize that "[t]here are two VALIC products at issue, a fixed annuity and a variable rate annuity." (*Id.* at 5.)

On April 19, 2013—almost five years after this suit was originally filed—Defendants removed to this Court for the second time, alleging that Plaintiff's request for admissions and April 10th Memorandum are "other paper" revealing that this action has become removable. Defendants assert that by defining her proposed class to include those teachers that invested in VALIC's variable annuity, Plaintiff shows that she is pursuing an action precluded by and subject to removal under SLUSA. Plaintiff moved to remand on May 23, 2013, stressing that she has not

moved to amend the Third Amended Complaint and that, as previously found by Judge Copenhaver, the claims contained within that pleading do not fall within the ambit of SLUSA.[3]

## II. LEGAL STANDARD

A civil action may be removed from state court to federal court if the action could have originally been commenced in federal court. 28 U.S.C. § 1441(a). A defendant seeking to remove a case must generally do so within thirty days of receiving the plaintiff's initial pleading. 28 U.S.C. § 1446(b). Where the existence of federal jurisdiction is unclear on the face of this initial pleading, however, the defendant may remove the action "within 30 days after receipt . . . , through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). By permitting a defendant to remove upon receiving notice that federal jurisdiction exists, this statute "discourages disingenuous pleading by plaintiffs in state court to avoid removal." *Addo v. Globe Life and Accident Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000).

Still, the removing party has the burden of establishing federal jurisdiction. *Mulcahey v. Columbia Organic Chemicals Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994). The removal statutes

---

[3] Plaintiff contends that her discovery requests and April 10th Memorandum should not be considered "other paper" and that the outcome of Defendants' prior removal is determinative now. In response, Defendants argue that Plaintiff has waived her right to challenge any procedural deficiencies in the notice of removal because her motion to remand was untimely. They cite 28 U.S.C. § 1447(c), which states that "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." Of course, Plaintiff's motion to remand is a challenge to this Court's subject matter jurisdiction. It is not subject to the section 1447(c) 30-day time period. *See Kircher v. Putnam Funds Trust*, 547 U.S. 633, 643-44 (2006) (reasoning that because removal under SLUSA is restricted to covered class actions, "a motion to remand claiming the action is not precluded must be seen as posing a jurisdictional issue."). The fact that Plaintiff's motion to remand was filed several days after the 30-day deadline is of no moment.

must be strictly construed, and any uncertainty about the existence of federal jurisdiction must be resolved in favor of remand. *Id.*

### III. ANALYSIS

Pointing to Plaintiff's requests for admissions and April 10th Memorandum, Defendants argue that Plaintiff has altered the definition of her proposed class to include those West Virginia school teachers who invested in the VALIC variable annuity. By so doing, Defendants believe that Plaintiff alleges fraud in the sale of a "covered security" and that this Court has exclusive jurisdiction under SLUSA over Plaintiff's claims. Defendants concede that the jurisdictional inquiry is normally limited to the well-pleaded complaint. They argue, however, that a district court is justified in looking to "other papers" to ascertain its jurisdiction where, as here, a plaintiff's claims are precluded by federal law.

### A. *Other Paper*

The Court must first determine whether Plaintiff's requests for admissions and April 10th Memorandum are the type of documents which constitute "other papers" under 28 U.S.C. § 1446(b). The Court concludes that they are. "The 'motion, order or other paper' requirement is broad enough to include any information received by the defendant, 'whether communicated in a formal or informal manner.'" *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 755 (4th Cir. 1996) (quoting *Broderick v. Dellasandro*, 859 F. Supp. 176, 178 (E.D. Pa. 1994)). Formal discovery requests clearly fall within its scope, as do filings of record with the state court. *Id.* Having so found, the Court must evaluate whether these documents reveal that Plaintiff's claims are subject to removal under SLUSA.

### B. Propriety of Removal under SLUSA

In 1995, Congress enacted the Private Securities Litigation Reform Act ("Reform Act"), to restrict the use of the class action device in private securities litigation. *See* H.R. Conf. Rep. N. 104-369, p. 31 (1995)). The Reform Act imposed stringent requirements meant to discourage these vexatious lawsuits, or "strike suits," against corporations in federal court. *See* 15 U.S.C. § 78u-4. Though it successfully achieved this purpose, the Reform Act brought about an unintended consequence. In an effort to avoid the federal forum, plaintiffs began bringing actions alleging fraud in the sale of publicly traded securities in state court instead. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 82 (2006).

Congress responded by adopting SLUSA, an act designed to halt this exodus from federal to state courts and to "'prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of' the Reform Act." *Merrill Lynch*, 547 U.S. at 83 (citation omitted). The central provision of SLUSA reads:

> (1) Class action limitations
> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f).[4] SLUSA further provides that any covered class action brought in state court

---

[4] SLUSA is a law of preclusion rather than preemption because it "does not itself displace state law with federal law but makes some state-law claims nonactionable through the class-action device in federal as well as state court." *Kircher*, 547 U.S. at 636 n.1 (citing *Merrill Lynch*, 547 U.S. at 87).

involving a "covered security" is removable to federal court.[5] 15 U.S.C. § 77p(c). If the federal court determines that the action is covered by SLUSA, the action may proceed in neither federal nor state court and must be dismissed. *Kircher*, 547 U.S. at 644. An action is covered by SLUSA's removal provision if it "(1) is a 'covered' class action (2) based on state statutory or common law that (3) alleges that defendants made a 'misrepresentation or omission of a material fact' or 'used or employed any manipulative device or contrivance in connection with the purchase or sale' (4) of a covered security." *Romano v. Kazacos*, 609 F.3d 512, 518 (2d Cir. 2010) (citing 15 U.S.C. § 78bb(f)). In the event that the federal court determines that the action is not precluded by SLUSA, it must be remanded to state court. 15 U.S.C. § 77p(c).

At issue here is the fourth element, that is, whether Plaintiff's claims involve the sale of a

---

[5] Under SLUSA,
>A security is a covered security if such security is—
>(A) listed, or authorized for listing, on the New York Stock Exchange or the American Stock Exchange, or listed, or authorized for listing, on the National Market System of the Nasdaq Stock Market (or any successor to such entities);
>
>(B) listed, or authorized for listing, on a national securities exchange (or tier or segment thereof) that has listing standards that the Commission determines by rule (on its own initiative or on the basis of a petition) are substantially similar to the listing standards applicable to securities described in subparagraph (A); or
>
>(C) a security of the same issuer that is equal in seniority or that is a senior security to a security described in subparagraph (A) or (B).
>. . .
>A security is [also] a covered security if such security is a security issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940.

15 U.S.C. § 77r. For SLUSA to apply, the instrument must fall within the above statutory definition "at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred." 15 U.S.C. § 78bb(5)(E).

9

covered security.[6] VALIC offered two investment options within the DCP: a fixed annuity and a variable annuity.[7] VALIC's fixed annuity—the only instrument mentioned in the Third Amended Complaint—is not a "covered security" under SLUSA. *See* Remand Order at *5. The variable annuity, on the other hand, constitutes a "covered security" under the statutory definition. *See Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 109 (2d Cir. 2001) (citing *SEC v. Variable Annuity Life Ins. Co. of Am.*, 359 U.S. 65, 79 (1959)).

Plaintiff transferred her entire retirement account to VALIC's fixed annuity product, and the Third Amended Complaint defines the putative class as those teachers who similarly transferred their retirement funds into the fixed annuity as a result of their reliance on Defendants' alleged misrepresentations. As Judge Copenhaver pointed out, "[P]laintiff makes no mention of other registered securities she and her fellow class members might have chosen as investment options available to them by participating in the DCP." (Remand Order at *5.) Defendants nonetheless insist that Plaintiff's recent filings reveal that her proposed class includes those teachers who were sold VALIC's variable annuity product as well. Plaintiff counters that it was her prerogative to exclude claims involving covered securities from her complaint and that Defendants cannot re-write her allegations in an attempt to invoke SLUSA preclusion.

The "other paper" doctrine upon which Defendants rely permits a party to remove a civil

---

[6] The parties agree that the prerequisites for application of SLUSA are otherwise satisfied. Plaintiff's action is a "covered" class action because she sues in a representative capacity. 15 U.S.C. § 77p(f)(2)(A)(i)(II); *see Behlen v. Merrill Lynch*, 311 F.3d 1087, 1093 (11th Cir. 2002) ("We . . . believe that it is clear from the statutory language that prospective class actions are removable to federal court even if the state court has not determined whether the action should go forward as a class action.").

[7] The parties' filings suggest that the fixed annuity was the only Board-approved investment option of the two and that the Board may not have been aware that VALIC also marketed its variable annuity to West Virginia teachers.

action within 30 days of it first becoming apparent that federal jurisdiction exists. 28 U.S.C. § 1446(b). "In most cases, when courts look to 'other paper' to ascertain removability, [they] are clarifying that diversity jurisdiction has been established." *Eggert v. Britton*, 223 Fed. App'x 394, 397 (5th Cir. 2007); *see also Connecticut v. McGraw Hill Cos., Inc.*, 3:13-cv-311, 2013 WL 1759864, *4 n.6 (D. Conn. April 24, 2013) ("In the diversity context . . . extrinsic documents and developments are far more likely to affect matters bearing directly on the existence of federal subject-matter jurisdiction, such as the citizenship of the parties, amounts in controversy, and real parties in interest."). The typical case involves a plaintiff bringing state law claims against a diverse party without specifying an amount in controversy. *See Eggert*, 223 Fed. App'x at 397. The defendant later removes after the plaintiff provides a document revealing that the necessary amount in controversy for diversity jurisdiction is at issue. *Id.*; *see, e.g.*, *Yarnevic*, 102 F.3d at 755 (looking to an extrinsic memorandum that was not made part of the state court record to conclude that a case had become removable on the basis of diversity).

Extrinsic documents will rarely, if ever, affect a federal court's subject matter jurisdiction in federal question cases because the jurisdictional inquiry is normally limited to the plaintiff's well-pleaded complaint. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the fact of the plaintiff's properly pleaded complaint."). For this reason, the "other paper" doctrine has little application in federal question cases. *See Eggert*, 223 Fed. App'x at 397. Since the plaintiff has exclusive authority to define the nature of his or her claims, documents extrinsic to the complaint are simply irrelevant. *Id.*

11

The "artful pleading" doctrine is a noteworthy exception to the well-pleaded complaint rule. This exception prevents a plaintiff from defeating removal "by omitting to plead necessary federal questions," *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22 (1983), and applies where "Congress has . . . expressly provided for the removal of particular actions asserting state law claims in state court." *Romano v. Kazacos*, 609 F.3d 512, 519 (2d Cir. 2010) (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003)). The artful pleading exception underlies Defendants' notice of removal. Defendants reason that with the recent service of Plaintiff's requests for admissions and April 10th Memorandum, it has become clear that Plaintiff disguised the true nature of her claims in an attempt to evade removal under SLUSA. Though the Third Amended Complaint's allegations are limited to the sale of the fixed annuity, Defendants believe that these recent state court filings reveal that Plaintiff has secretly intended to pursue claims of fraud in the sale of the variable annuity all along.

To support their contentions, Defendants cite a number of federal appellate cases elucidating SLUSA's "in connection with" language. *See Roland v. Green*, 675 F.3d 503, 520 (5th Cir. 2012), *cert granted in part*, 133 S. Ct. 978 (U.S. Jan. 18, 2013) (No. 12-88); *Romano*, 609 F.3d at 519-20; *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 298 (3d Cir. 2005). In each case, the court invoked the artful pleading exception to determine whether the plaintiffs' state law allegations fell within the scope of SLUSA. Because a plaintiff may not "elude SLUSA's prohibitions by editing out covered words from the complaint . . . [while] leav[ing] in the covered concepts," *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310 (6th Cir. 2009) (citing *Rowinski*, 398 F.3d at 300), these cases counsel that "[n]o matter how an action is pleaded, if it is a covered class

12

action involving a covered security, removal [under SLUSA] is proper." *Rowinski*, 398 F.3d at 298 (internal quotation marks and citations omitted).

Contrary to Defendants' assertions, the artful pleading exception has no application here. The exception permits a federal court to probe into the substance of a complaint to determine whether its claims are necessarily federal. *See Romano*, 609 F.3d at 519 (quoting *Segal*, 581 F.3d at 610). Defendants do not ask this Court to find that a federal question lurks beneath the surface of Plaintiff's Third Amended Complaint. They do not, and indeed cannot, contend that SLUSA applies to Plaintiff's claims as alleged in that pleading. Instead, they ask the Court to graft in claims that have not been pled by adopting their interpretation of certain documents *external* to the Third Amended Complaint.

The cases which Defendants have selected to support their arguments do not endorse the action they request this Court to take. At issue in *Roland*, *Rowinski*, and *Romano* was whether the plaintiffs' respective class allegations, "while nominally resting on state law, nevertheless allege[d] a material misrepresentation in connection with the purchase or sale of securities." *Rowinski*, 398 F.3d at 300. There, the appellate courts scrutinized the substance of the plaintiffs' allegations to determine whether they were subtly "connected" to the purchase or sale of securities.[8] Each court limited its analysis to the four corners of the operative complaint before it.

Defendants fail to identify a single case where a federal court has used the "order or other paper" rule to inject a federal question into a complaint that alleges strictly state law based claims.

---

[8] In the case at hand, Judge Copenhaver considered and rejected a similar argument in his previous remand order. There, Defendants argued that because Plaintiff had multiple investment options available to her within the DCP, her allegations of fraud in the sale of the fixed annuity were necessarily "connected" to the sale of securities. Judge Copenhaver found that Plaintiff's claims are not sufficiently "connected" to the purchase or sale of securities to bring her allegations within the ambit of SLUSA. Remand Order at *6.

13

There is sparse authority on the subject, and the few cases to address the topic recommend that federal courts should rely on "other paper" to ascertain federal question jurisdiction only when necessary to clarify an ambiguity in the plaintiff's pleading. *See Eggert*, 223 Fed. App'x at 397-98. In *Peters v. Lincoln Electric Company*, for example, the Sixth Circuit looked to the contents of the plaintiff's deposition testimony to conclude that his complaint alleged claims preempted by the Employee Retirement Income Security Act ("ERISA"). 285 F.3d 456, 469 (6th Cir. 2002). In *Peters*, the plaintiff brought a lawsuit against his former employer, Lincoln Electric Company, alleging age discrimination, breach of promises, detrimental reliance, and breach of public policy. *Id.* at 464. The complaint did not specify the nature of the "broken promises" for which the plaintiff sought redress. *Id.* at 466.

At the plaintiff's deposition, he testified that he had sued Lincoln, in part, because it had breached a promise to continue his participation in its retirement plan—a plan subject to the enforcement provisions of ERISA. *Id.* at 466-67. Lincoln thereafter removed the action to federal court, citing the plaintiff's deposition testimony as an "other paper" which revealed that the plaintiff was pursuing claims preempted by ERISA. In evaluating the propriety of removal, the Sixth Circuit first noted that the "complete preemption exception" to the "well-pleaded complaint rule" applies to ERISA claims. *Id.* at 467-68. Because the deposition testimony clarified what was once ambiguous in the complaint—that is, that the plaintiff's "breach of promises" claim was in essence a claim to recover an ERISA plan benefit—the Sixth Circuit found that federal question jurisdiction existed. *Id.* at 469.

The decision in *Peters* is an anomaly. Here, Plaintiff's Third Amended Complaint needs no clarification and contains no ambiguity. The fact that Plaintiff has referenced VALIC's

14

variable annuity product in her state court filings does not justify the Court's use of these filings to insert entirely novel allegations into the Third Amended Complaint. Plaintiff is entitled to discovery regarding any matter relevant to her claims, so long as it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Given the broad scope of discoverable material, Defendants' argument that Plaintiff's inquiry into the sale of the variable annuity in her discovery establishes federal question jurisdiction is absurd. These requests for admissions may have merited a relevance objection, but they do not have the effect of imputing to Plaintiff allegations that she was free to omit from her Third Amended Complaint. The Court reaches the same conclusion with regard to the April 10th Memorandum. Plaintiff's statements to the state court are indeed puzzling and inconsistent with her own Third Amended Complaint. Still, there is no ambiguity in the substance of Plaintiff's allegations that would justify the Court's use of this document to ascribe to her claims which she has not pled.[9]

As Defendants concede that no federal question exists in either the substance or form of Plaintiff's Third Amended Complaint, the Court **FINDS** that Plaintiff's state court filings are not "other papers" from which it can be ascertained that this case has become removable. Plaintiff's motion to remand will be granted.

---

[9] In her briefing on the pending motion to remand, Plaintiff vehemently argues that her claims are limited to those that allege fraud in connection with the sale of VALIC's fixed annuity. Nonetheless, Plaintiff's definition of her proposed class in the April 10th Memorandum seems at odds with the definition espoused by the Third Amended Complaint. Though the Court finds that this does not suffice to give rise to federal question jurisdiction, a word of caution is warranted. If, at some point following remand, it becomes clear that Plaintiff has misled this Court with the intent of amending her complaint at a later date to pursue claims based on the variable annuity, Plaintiff's counsel will be subject to Rule 11 sanctions should Defendants thereafter successfully remove yet again to this Court.

## IV.　CONCLUSION

For the reasons set forth above, Plaintiffs' motion to remand [ECF 14] is **GRANTED**. The Court hereby **REMANDS** this case to the Circuit Court of Kanawha County, West Virginia, for further proceedings.  The Court further **DENIES** Defendants' motion for leave to file a surreply [ECF 22].  Plaintiff's request for attorney's fees and costs incurred as a result of the removal is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:　　December 19, 2013

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE